IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DEREK JARVIS
                                :

   v.                           : Civil Action No. DKC 08-1694

FEDEX OFFICE AND PRINT
SERVICES, INC.                 :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this race discrimination case brought pursuant to 42 U.S.C. § 1981 is a motion for sanctions filed by Plaintiff Derek Jarvis (paper 60), a motion for summary judgment filed by Defendant FedEx Office and Print Services, Inc. ("FedEx Office") (paper 50), and Plaintiff's cross-motion for summary judgment (paper 59). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, each of these motions will be denied.

I. **Background**

A. **Factual Background**

The facts alleged in the initial complaint, construed in a light most favorable to Plaintiff, were set forth in detail in a prior memorandum opinion of this court. (Paper 28). They will be briefly restated here. On June 16, 2006, at approximately 1:30 a.m., Plaintiff Derek Jarvis, an African-American, and his

Caucasian friend, Jaime Zeas, went to a FedEx Office location on the second floor of a shopping plaza in Bethesda, Maryland ("Bethesda FedEx").  The Bethesda FedEx was open for business around the clock, but during late night hours the front door was locked for safety purposes and customers were required to ring a buzzer to gain entrance.

Upon their arrival, Plaintiff walked up a flight of stairs to the front door of the FedEx location while Mr. Zeas gathered a laptop computer and other materials in the car.  Plaintiff rang the buzzer and saw Roger Sindelar, Operations Manager at the Bethesda FedEx, seated behind a desk inside, but Mr. Sindelar would not permit him to enter the store and gestured for him to leave.  Plaintiff returned to the car and informed Mr. Zeas that the store appeared to be closed.  When Mr. Zeas, walked to the front door and rang the buzzer, however, he immediately gained entrance.  Thereafter, he opened the door for Plaintiff.

Mr. Sindelar appeared to be angry that Plaintiff was allowed to enter the store and glared at him.  Plaintiff told Mr. Zeas that he was uncomfortable and wanted to leave, but Mr. Zeas insisted that they stay until he completed his work, stating that other FedEx Office locations would be closed. Plaintiff sat at a computer station directly across from his colleague while Mr. Zeas attempted to attach a "zip drive" to a

2

FedEx computer.  Plaintiff intended to use the computer at his desk, but before he could do so Mr. Sindelar rushed toward him and loudly demanded that he leave the store.  When Plaintiff asked for clarification, Mr. Sindelar yelled, "leave the store immediately" in a threatening manner.  Mr. Zeas intervened, telling Mr. Sindelar, "he's with me."  Mr. Sindelar then told Plaintiff, "you have to move" and "you can't be in here" before walking away.  Although both Plaintiff and Mr. Zeas were uncomfortable, they remained while Mr. Zeas attempted to complete his work.  He was having difficulty with the FedEx computer, however, and asked Plaintiff to summon Mr. Sindelar for assistance.  When Plaintiff asked for help, Mr. Sindelar was rude and dismissive, advising that he would "be over in a few minutes."  As Plaintiff turned to walk away, he heard Mr. Sindelar say, "damn niggers."

Mr. Zeas was unable to resolve the computer problem at the Bethesda FedEx, so he and Plaintiff proceeded to another FedEx Office location in Rockville, Maryland ("Rockville FedEx"), that was also open on a 24-hour basis.  Approximately fifteen minutes after they arrived, Mr. Sindelar appeared at the Rockville FedEx and began laughing with other employees while pointing at Plaintiff and gesturing in a threatening manner.  To avoid a potential confrontation, Plaintiff left the store and waited in the car for Mr. Zeas to complete his work.

**B.    Procedural Background**

On August 9, 2006, Plaintiff filed a complaint of alleged discrimination in public accommodations with the Montgomery County Office of Human Rights ("MCOHR"). (Paper 24, Ex. 1). On July 5, 2007, the MCOHR issued a determination finding no reasonable grounds to believe that a violation had occurred and advising Plaintiff of his right either to appeal the determination to the Human Rights Commission Case Review Board ("CRB") or to file suit in the Circuit Court for Montgomery County, Maryland. (Paper 8, Ex. 3 at 9). Plaintiff filed a timely notice of appeal to the CRB, arguing that the MCOHR investigator reached "false conclusions" based on "fabricated assumptions" and exhibited "bias and [p]rejudice" against him during the investigation. (Paper 8, Ex. 4).

While his appeal was still pending, Plaintiff filed a *pro se* complaint in the Circuit Court for Montgomery County, alleging: (1) violation of Article 49B of the Maryland Code and 42 U.S.C. § 1981; (2) intentional infliction of emotional distress; (3) violation of 42 U.S.C. § 1983; (4) negligent training and supervision; (5) spoliation of evidence; and (6) violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, *et seq.* (Paper 2). Defendant subsequently removed the case to this court on the bases of federal question and diversity jurisdiction (paper 2), and on July 7, 2008, filed a

4

motion to dismiss, alleging that the complaint failed to comply with the pleading requirements of Fed.R.Civ.P. 8(a) and failed to state a claim under Fed.R.Civ.P. 12(b)(6) (paper 8).  Shortly thereafter, Plaintiff moved for summary judgment.  (Paper 23).

On March 10, 2009, this court issued an order granting Defendant's motion to dismiss and denying as moot Plaintiff's motion for summary judgment.  (Paper 29).  Four of Plaintiff's claims were dismissed with prejudice, but two – the first count, alleging a § 1981 violation, and the sixth, alleging violation of Title II – were dismissed without prejudice to Plaintiff's right to file an amended complaint within fifteen days.  With respect to the § 1981 claim, the court explained that "[s]ection 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's," and found that Plaintiff's allegations were "insufficient to show that Defendant interfered with Plaintiff's own contractual relationship."  (Paper 28, at 16).[1]

---

[1] Plaintiff moved for reconsideration of this order (paper 30), but before that motion could be decided, he filed a notice of appeal (paper 33).  The Fourth Circuit affirmed on October 23, 2009.  *See Jarvis v. FedEx Office & Print Services, Inc.*, 334 Fed.Appx. 571 (4th Cir. 2009) (*per curiam*).  The appellate court's mandate was stayed, however, upon Plaintiff's filing of a petition for rehearing *en banc*.  (Paper 61).  That petition was denied on December 1, 2009 (paper 67), and the Fourth Circuit's mandate took effect on December 9, 2009 (paper 68).

On March 19, 2009, Plaintiff filed a motion for leave to amend, attaching as an exhibit a proposed amended complaint raising four claims: (1) interference with the right to contract and (2) denial of access in violation of 42 U.S.C. § 1981 and Md. Code Ann. 49B, (3) negligent training and supervision, and (4) violation of Title II. (Paper 35, Ex. 1).  On April 2, 2009, the court issued an order granting in part and denying in part Plaintiff's motion. (Paper 45).  With respect to the two § 1981 claims, the court determined that the amended complaint was sufficient to state a claim insofar as it asserted that Plaintiff went to Bethesda FedEx "to work on his father's estate case, to check email, and to use the Internet." (Paper 44, at 6).  Relief was denied, however, with respect to the remaining claims.   Thus,  at  present,  Plaintiff's  amended  complaint consists of two counts alleging violation of § 1981.

Defendant answered the amended complaint on April 16, 2009, and, shortly thereafter, filed its motion for summary judgment. (Paper 50).  Several days later, Plaintiff moved to stay the proceedings pending resolution of his appeal.  (Paper 52).  In addition to seeking a stay, this motion also sought Rule 11 sanctions against Defendant for filing a "frivolous" motion for summary judgment and judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c), as a sanction for Defendant's alleged spoliation of video evidence.  The court denied relief and

ordered Plaintiff to respond to Defendant's motion for summary judgment within fifteen days.  (Paper 58).  Less than one week later, Plaintiff filed an opposition to Defendant's motion and cross-motion for summary judgment (paper 59), along with a separate motion for sanctions related to Defendant's alleged spoliation of videotape evidence (paper 60).

## II.  Plaintiff's Motion for Sanctions

During the administrative proceedings, an issue arose regarding a surveillance video taken at the Bethesda FedEx on the date of the incident.  When the MCOHR investigator requested to view the video, FedEx Office advised that the DVD containing the footage had been damaged and, as a result, only approximately one minute of the recording was viewable. Defendant further asserted that the video had been viewed by one employee – Bethesda FedEx Manager Michael Frasier – before it was damaged, and Mr. Frasier provided a statement describing what it depicted, *i.e.*, an apparently innocuous interaction between Mr. Sindlar, Mr. Zeas, and Plaintiff.  (Paper 24, Ex. E-3, D-2).  In its determination, the MCOHR credited FedEx Office's explanation that the DVD had been damaged and adopted Mr. Frasier's account of events.  (Paper 8, at 7-8).  The CRB subsequently issued an order remanding the case back to MCOHR for further investigation, due primarily to its concern that a negative inference was not drawn from FedEx's failure to produce

7

the DVD and that the MCOHR appeared to accept blindly Mr. Frasier's description.  (Paper 23, Ex. E at 1).   In response to the remand order, Defendant promptly submitted the allegedly damaged DVD to the CRB for review.  (Paper 23, Ex. C).   On December 17, 2007, the MCOHR investigator advised the CRB, in a written memorandum, that she had received the DVD from FedEx Office and attempted to view it, but was only able to watch "10 seconds" of nondescript footage.  (Paper 24, Ex. E-8).

Throughout this litigation, Plaintiff has repeatedly alleged impropriety on the part of FedEx Office related to the surveillance video.[2]   His initial complaint included a freestanding claim alleging spoliation of video evidence. (Paper 2, at 16).   After that claim was dismissed with prejudice, Plaintiff attempted to revive it in his proposed amended complaint, relabeling it as "Obstruction of Justice and Spoliation of Videotape Evidence." (Paper 35, Ex. 1 at 8).  He requested that sanctions be imposed for spoliation of this evidence in his initial motion for summary judgment (paper 23), which was denied as moot, and again in his motion to stay pending appeal (paper 52), which sought judgment on the

---

[2] While Plaintiff asserts that the surveillance DVDs from both the Bethesda and Rockville locations are at issue, the substance of his motion addresses only the video from the Bethesda FedEx.   There is no record of Plaintiff having requested the surveillance video from the Rockville FedEx.

pleadings as a sanction for the alleged spoliation. The court denied Plaintiff's motion for judgment on the pleadings on October 27, 2009, finding that such relief was "improper at this stage of the proceedings." (Paper 57, at 6).

The instant motion, in which Plaintiff renews his request for sanctions, was filed less than one week later. (Paper 60). The thrust of this rambling and repetitive motion is that representatives of FedEx Office made "several inconsistent statements with respect to the video recording" during the administrative proceedings, which Plaintiff cites as evidence that Defendant intentionally damaged the DVD in order to prevent its content from coming to light in this litigation. Plaintiff seeks an adverse inference instruction, judgment on the pleadings, entry of default judgment, and/or a grant of summary judgment as a sanction.

In denying Plaintiff's previous motion for judgment on the pleadings, this court explained that a party seeking sanctions for spoliation must demonstrate that:

> (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind"; and (3) the evidence that was destroyed or altered was "relevant" to the claims or the defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the

> claims or defenses of the party that sought
> it.

(Paper 57, at 5-6 (quoting *Goodman v. Praxair Services, Inc.*, 632 F.Supp.2d 494, 509 (D.Md. 2009) (internal citation omitted)).

While it is undoubtedly true that Defendant had an obligation to preserve the surveillance video footage, Plaintiff offers nothing, aside from conclusory allegations, suggesting that the DVD was damaged by Defendant with a "culpable state of mind."  Indeed, Defendant has presented multiple declarations of its representatives unequivocally stating otherwise.  Moreover, Plaintiff has failed to identify any change of circumstance occurring between the date the court issued its prior order, denying a virtually identical motion, and the date he filed the instant motion less than one week later.  He appears simply to present the same substantive claim under a new label, requesting different sanctions.  The court will not countenance such practices.  Plaintiff's motion will be denied.

## III. Cross-Motions for Summary Judgment

### A. Standard of Review

It is well-established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby,*

10

*Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celetox Corp.*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion

for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Furthermore, while the court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, the requirement of liberal construction does not mean that the court can assume the existence of a genuine issue of material fact where none exists. *See Weller v. Dep't of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985).

When faced with cross-motions for summary judgment, as in this case, the court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir.), *cert. denied*, 540 U.S. 822 (2003)

(internal quotation marks omitted); *see also havePower, LLC v. Gen. Elec. Co.*, 256 F.Supp.2d 402, 406 (D.Md. 2003) (citing 10A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2720 (3d ed. 1983)).  The court reviews each motion under the familiar standard for summary judgment, *supra*.  The court must deny both motions if it finds there is a genuine issue of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment."   10A Federal Practice & Procedure § 2720.

 B.   **Analysis**

 In initially dismissing Plaintiff's claim under 42 U.S.C. § 1981, the court determined that his allegation that he "was about to use the computer at his desk" at the Bethesda FedEx when Mr. Sindelar "rushed over to Plaintiff . . . and screamed at him to leave the store at once" was insufficient to establish that he was prevented from contracting with Defendant, as required to state a claim for relief under § 1981.  (Paper 28, at 15).  As noted, however, Plaintiff was permitted to file an amended complaint as to that count.  He subsequently filed a motion for leave to amend, attaching an amended complaint stating that he accompanied Mr. Zeas to the Bethesda FedEx on the evening in question "to work on [his] father['s] estate case" and "to check his email and go on the Internet."  (Paper

13

35, Ex. 1 at 4).   Defendant opposed that motion, arguing that because Plaintiff had previously represented on a number of occasions that his sole purpose for being at the Bethesda FedEx was to accompany Mr. Zeas while he completed a legal assignment, his amended complaint could not survive a motion to dismiss. (Paper 40, at 3).   The court disagreed, noting that Defendant relied on documents outside of the pleadings to rebut Plaintiff's revised allegation, and finding that, "[o]n its face, Plaintiff's amended complaint is sufficient to state a claim under § 1981." (Paper 44, at 6).

In its motion for summary judgment, Defendant characterizes the court's permitting Plaintiff to amend his § 1981 claim as "based solely on its decision not to look beyond the four corners of the pleading in making its determination." (Paper 63, at 4). Defendant now renews the objection it stated in its opposition to the motion for leave to amend, albeit in the context of a motion for summary judgment, which permits the court to consider evidence of Plaintiff's prior statements inconsistent with those alleged in his amended complaint. Defendant argues that "[t]here is no competent evidence to contradict Plaintiff's prior admissions that he went [to] FedEx Office to accompany his friend, and not for his own business," thus a grant of summary judgment in its favor is proper. (Paper 63, at 4-5).   Similarly, Plaintiff's cross-motion asserts that

14

Defendant "has not presented any evidence whatsoever that would refute the Plaintiff's contention that FedEx Office violated Plaintiff's [r]ight to [c]ontract under [§] 1981." (Paper 59, at 21). Because the court finds that based on the present record, prior to the commencement of discovery, there is a genuine dispute as to material fact regarding whether Mr. Sindelar, acting out of racial animus, thwarted Plaintiff's attempt to contract with FedEx Office, both motions will be denied.

Section 1981(a) provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts, . . . as is enjoyed by white citizens[.]" The term "make and enforce contracts" is defined as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Most § 1981 actions involve employment discrimination claims, and courts analyze such cases by employing the same statutory scheme used in cases brought under Title VII. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 278 (4th Cir. 2000); *Gairola v. Commonwealth of Virginia Dept. of Gen. Servs.*, 753 F.2d 1281, 1285-86 (4th Cir. 1985) (citations omitted). Discrimination claims involving retail transactions are more

15

rare.  *See Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996).   When faced with such claims, courts have generally employed a three-prong test.  To state a cause of action under § 1981 in this context, a plaintiff must show that (1) he is a member of a racial minority, (2) the defendant intended to discriminate against him on the basis of race, and (3) the discrimination concerned one or more of the activities protected by the statute.  *See Buchanan v. Consolidated Stores Corp.*, 125 F.Supp.2d 730, 734 (D.Md. 2001) (citing *Hill v. Shell Oil Co.*, 78 F.Supp.2d 764, 776 (N.D.Ill. 1999)); *Bobbitt v. Rage, Inc.*, 19 F.Supp.2d 512, 517 (W.D.N.C. 1998).

Here, the first element is not disputed – Plaintiff is African-American and thus is a member of a racial minority. Furthermore, the allegations contained in Plaintiff's amended complaint and supporting documents, if proven, provide a basis upon which a reasonable jury could conclude that Mr. Sindelar intended to discriminate against Plaintiff on the basis of his race; thus, the second element is also satisfied.  The only remaining question, then, is whether the alleged discrimination concerned an activity protected by § 1981.  As Defendant states, "[t]he success of both of Plaintiff's two remaining counts under Section 1981 . . . hinges on whether, in the wee hours of June 16, 2006, Plaintiff went to FedEx Office's Bethesda Store for his own business."  (Paper 63, at 2) (emphasis removed).

This court considered a similar issue in *Baltimore-Clark v. Kinko's, Inc., et al.*, 270 F.Supp.2d 695, 699-700 (D.Md. 2003), setting forth the following standard:

> As stated by the First Circuit in *Garrett v. Tandy Corp.*, 295 F.3d 94 (1st Cir. 2002), "in order to satisfy the foundational pleading requirements for a suit under section 1981, a retail customer must allege that he was actually denied the ability to make, perform, enforce, modify, or terminate a contract, or to enjoy the fruits of a contractual relationship, by reason of a race-based animus." *Id.*, at 100-01, citing *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 752 (5th Cir. 2001); *Hampton v. Dillard Dep't Stores*, Inc., 247 F.3d 1091, 1118 (10th Cir. 2001); *Office Max*, 89 F.3d at 414. Courts, including this one, that have examined discrimination in the retail context under § 1981 have focused on the question of whether a plaintiff's right to contract has been impeded, thwarted, or deterred in some way, *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358-59 (5th Cir. 2003); *Morris*, 277 F.3d at 751 ("where a customer has engaged in an actual attempt to contract that was thwarted by the merchant, courts have been willing to recognize a § 1981 claim."); *Office Max*, 89 F.3d at 414 (holding that where a defendant did not deny plaintiffs admittance or service and did not ask plaintiffs to leave the store, defendant did not deprive plaintiffs of the right to make and enforce a contract), or whether special conditions have been placed on a plaintiff's right to contract. *Buchanan*, 125 F.Supp.2d at 735-36, citing *Hill*, 78 F.Supp.2d at 776-77 (holding that black plaintiffs who purchased gasoline stated a cause of action under § 1981 where defendants forced them but not white patrons to prepay); *Bobbitt*, 19 F.Supp.2d at 519 (denying motion to dismiss where plaintiffs were allowed to purchase a

> pizza, but, unlike other customers, were
> forced to prepay for it).

In his amended complaint, Plaintiff claims that Defendant "interfered with [his] right to contract for services by denying [him] . . . the full and equal enjoyment of goods, services, facilities, privileges[,] advantages and accommodations . . . because of his race[.]" (Paper 35, Ex. 1 at 3). He has submitted an "affidavit" attached to his opposition and cross-motion for summary judgment stating that he went to the Bethesda FedEx "to check my email and go on the [I]nternet before my colleague and I began work on my father's probate case in Washington, D.C." (Paper 59, Ex. 15 at ¶ 6).[3] He further claims that he was prevented from doing so due to "Mr. Sindelar's racially motivated behavior, because he told me to 'Leave the Store['] before I could check email." (*Id*. at ¶ 14). While ordering Plaintiff to leave the store does not, in and of itself, demonstrate racial animus, the allegation that Mr. Sindelar later said "damn niggers" clearly does. Moreover, the court does not read the allegations in Plaintiff's amended complaint and supporting documents as necessarily being inconsistent with the assertion in his initial complaint that he

---

[3] While this unsworn document is not an affidavit, Plaintiff did certify that the statements made therein were true and correct under penalty of perjury. (Paper 59, Ex. 15 at 4). Thus, it satisfies the requirements for an unsworn declaration under penalty of perjury, pursuant to 28 U.S.C. § 1746.

"was about to use the computer at his desk" when Mr. Sindelar
"rushed over to Plaintiff . . . and screamed at him to leave the
store at once." (Paper 2, at 8).  Indeed, there appears to be
no dispute that Plaintiff's use of the computer would have
constituted a contract with FedEx Office, and Plaintiff clearly
alleges that such use was thwarted by Mr. Sindelar's
discriminatory conduct.  What is significant is that he entered
the Bethesda FedEx with the intent to use a computer, *i.e.*, to
enter into a contractual basis, and was prevented from doing so.
His reason for wanting to use the computer is largely
irrelevant.  *See Garrett*, 295 F.3d at 100 ("section 1981 . . .
applies to those situations in which a merchant, acting out of
racial animus, impedes a customer's ability to enter into, or
enjoy the benefits of, a contractual relationship" (citing
*Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir.
2001)).

As Defendant observes, there is evidence supporting an
argument that Plaintiff simply invented new facts to support his
claims in the amended complaint.  An alternative view, however,
is both plausible and supported by competent evidence.
Discovery may eventually shed more light on this subject, but at
this nascent stage of the litigation, Plaintiff has at least
earned the right to try to develop his case.  In sum, the court
finds there is a genuine dispute as to material fact regarding

whether Mr. Sindelar, acting out of racial animus, impeded Plaintiff's ability to contract with FedEx Office.  Because both motions, therefore, must fail, *see American Fidelity & Cas. Co. v. London & Ediburgh Ins. Co.*, 354 F.2d 214, 216 (4th Cir. 1965) (cross-motions for summary judgment must be denied where "a genuine issue of fact or inference from fact is presented"), there is no need to address the other numerous issues of material fact presently in dispute.

## IV.  Conclusion

For the foregoing reasons, Plaintiff's motion for sanctions, Defendant's motions for summary judgment, and Plaintiff's cross-motion for summary judgment will be denied.  A separate order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge