IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DEREK N. JARVIS

v.                              : Civil Action No. DKC 08-1694

FEDEX OFFICE AND PRINT
SERVICES, INC.                  :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this race discrimination case is a motion for reconsideration filed by Plaintiff Derek N. Jarvis (ECF No. 72); a motion to strike filed by Defendant FedEx Office and Print Services, Inc. (ECF No. 77); Plaintiff's motion to strike discovery requests (ECF No. 80); Defendant's motion to dismiss or, in the alternative, for summary judgment (ECF No. 92); two motions to seal filed by Defendant (ECF Nos. 95, 101); two motions for sanctions filed by Plaintiff (ECF Nos. 96, 97); and Plaintiff's cross-motion for summary judgment (ECF No. 98). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion for summary judgment and its motions to seal will be granted. The remaining motions will be denied.

## I.  Background

### A.  Factual Background

The following facts are alleged in Plaintiff's amended complaint.  (ECF No. 35, Attach. 1).  In the early morning hours of June 16, 2006, Plaintiff Derek Jarvis, an African-American, and his colleague, Jaime Zeas, a Caucasian, went to a FedEx Office store in Bethesda, Maryland ("Bethesda FedEx"), "to work on the plaintiff's father[']s estate case" and for Plaintiff to "check his email and go on the internet." (*Id.* at 4).  Upon their arrival, Plaintiff approached the entrance while Mr. Zeas gathered materials from his car.  Plaintiff attempted to enter the store, but discovered the doors were locked.  Inside, he saw Bethesda FedEx operations manager Roger Sindelar, a Caucasian, gesturing to Plaintiff in a manner suggesting that the store was closed.  Plaintiff returned to the car and advised Mr. Zeas of this fact.  Believing the Bethesda FedEx to be open on a twenty-four hour basis, Mr. Zeas approached the front door, rang a buzzer for late night access, and was promptly permitted to enter.  He then opened the door for Plaintiff.

Shortly after Plaintiff entered the store, Mr. Sindelar allegedly "approached [him] in a menacing manner" and "yelled at [him] to 'leave the FedEx [i]mmediately' several times." (*Id.* at 5).  When Mr. Zeas advised the manager that Plaintiff had accompanied him to the store, Mr. Sindelar walked away.  Mr.

Zeas subsequently experienced difficulty with a computer he was attempting to use and asked Plaintiff to seek assistance from Mr. Sindelar. When Plaintiff approached the manager and asked for help, Mr. Sindelar told him he would be right over. As Plaintiff walked back toward his colleague, he allegedly heard Mr. Sindelar state, "damn niggers." (*Id.*). Mr. Sindelar attempted to help Mr. Zeas, but was unable to resolve the problem. Soon thereafter, he advised Plaintiff and Mr. Zeas that he needed to close the store temporarily, at which point the two men went to another FedEx Office location.

### B. Procedural Background

After exhausting his administrative remedies, Plaintiff filed a *pro se* complaint in the Circuit Court for Montgomery County, alleging (1) violation of Article 49B of the Maryland Code and 42 U.S.C. § 1981, (2) intentional infliction of emotional distress, (3) violation of 42 U.S.C. § 1983, (4) negligent training and supervision, (5) spoliation of evidence, and (6) violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, *et seq.* (ECF No. 2). Plaintiff sought $50 million in punitive and compensatory damages, an award of attorney's fees, and declaratory and injunctive relief.

Defendant timely removed to this court on the basis of federal question and diversity jurisdiction and, on July 7, 2008, moved to dismiss (ECF No. 8). In response, Plaintiff

moved for summary judgment. (ECF No. 23). By a memorandum opinion and order issued March 10, 2009, the court granted Defendant's motion, dismissing the complaint, but permitting Plaintiff to amend as to two counts, and denied Plaintiff's motion as moot. (ECF Nos. 28, 29). The court additionally found that Plaintiff could not recover punitive or compensatory damages under the facts alleged, nor could he recover attorney's fees, as he was representing himself. (ECF No. 28, at 18-19).[1]

Soon thereafter, Plaintiff filed a motion for leave to amend, attaching as an exhibit a proposed amended complaint raising four claims: (1) interference with the right to contract and (2) denial of access in violation of § 1981 and Md. Code Ann., Art. 49B, (3) negligent training and supervision, and (4) violation of Title II. (ECF No. 35, Attach. 1).[2] The amended

---

[1] Plaintiff moved for reconsideration of this decision (ECF No. 30) and, before that motion could be decided, filed a notice of appeal (ECF No. 33). The court denied his motion for reconsideration on April 2, 2009 (ECF No. 45), and the United States Court of Appeals for the Fourth Circuit affirmed the decision granting Defendant's motion to dismiss on October 23, 2009. *See Jarvis v. FedEx Office & Print Services, Inc.*, 334 Fed.Appx. 571 (4th Cir. 2009) (per curiam). The appellate court's mandate was stayed, however, upon Plaintiff's filing of a petition for rehearing *en banc*. (ECF No. 61). That petition was denied on December 1, 2009 (ECF No. 67), and the Fourth Circuit's mandate took effect on December 9, 2009 (ECF No. 68).

[2] Since the time the amended complaint was filed, Article 49B has been repealed in its entirety and replaced, in pertinent part, by Md. Code Ann., State Gov't § 20-304 (2009). The language of this statute "generally tracks" the language of §

4

complaint sought an award of $10 million in compensatory damages, $25 million in punitive damages, as well as injunctive and declaratory relief. On April 2, 2009, the court issued a memorandum opinion and order granting in part and denying in part Plaintiff's motion. (ECF Nos. 44, 45). The court determined that Plaintiff sufficiently pled the first two counts of the amended complaint, but that he could not proceed on the remaining counts. It further found that the amended complaint, like the original, failed to allege sufficient facts supporting an award of punitive or compensatory damages. (ECF No. 44, at 7).

Defendant answered the amended complaint on April 16, 2009, and subsequently filed a motion for summary judgment. Several days later, Plaintiff moved to stay the proceedings pending resolution of his appeal. In addition to seeking a stay, this motion also requested, *inter alia*, judgment on the pleadings as a sanction for Defendant's alleged spoliation of video evidence. The court denied all requested relief and ordered Plaintiff to respond to Defendant's motion for summary judgment within fifteen days. (ECF No. 58). Plaintiff filed an opposition to Defendant's motion and cross-motion for summary judgment (ECF No. 59), along with a separate motion for sanctions related to

---

1981. *Jarvis v. Staples, Inc.*, Civ. No. PJM 10-244, 2010 WL 4942010, at *3 n. 1 (D.Md. Nov. 30, 2010).

Defendant's alleged spoliation of video evidence (ECF No. 60). The cross-motions for summary judgment and Plaintiff's motion for sanctions were denied. (ECF Nos. 69, 70). On March 22, 2010, Plaintiff moved for reconsideration of the order denying his motion for sanctions. (ECF No. 72).

On April 8, 2010, Plaintiff filed a document entitled "Plaintiff's Response to Defendant Fed Ex Office & Print Services Regarding Damages and Refusal to Submit Documents," challenging the content and sufficiency of Defendant's Rule 26(a)(1) disclosures. (ECF No. 74). On April 20, 2010, Defendant filed a motion to strike this document. (ECF No. 77). Plaintiff responded by moving to strike Defendant's discovery requests as a sanction for the alleged spoliation of video evidence. (ECF No. 80).

On September 17, 2010, Defendant filed the pending motion to dismiss or, in the alternative, for summary judgment (ECF No. 92), followed by a motion to seal an attached exhibit (ECF No. 95). Plaintiff responded by filing two motions for sanctions (ECF Nos. 96, 97) and a cross-motion for summary judgment (ECF No. 98). Defendant moved to seal an exhibit attached to Plaintiff's cross-motion. (ECF No. 101).

**II. Plaintiff's Motions Related to Alleged Spoliation of Evidence**

During the administrative case that preceded the filing of Plaintiff's complaint, an issue arose regarding a surveillance video taken at the Bethesda FedEx on the date of the incident. When an investigator from the Montgomery County Office of Human Rights ("MCOHR") requested to view the video, Defendant advised that the DVD containing the footage had been damaged and, as a result, only approximately one minute of the recording could be viewed. Defendant further asserted that the video had been viewed previously by Bethesda FedEx manager Michael Frasier before it was damaged, and Mr. Frasier provided a statement describing what it depicted, *i.e.*, an apparently innocuous interaction between Mr. Sindelar, Mr. Zeas, and Plaintiff. (ECF No. 24, Ex. E-3, D-2). In its determination, the MCOHR credited Defendant's explanation that the DVD had been damaged and adopted Mr. Frasier's account of events. (ECF No. 8, at 7-8). The Human Rights Commission Case Review Board ("CRB") subsequently issued an order remanding the case back to MCOHR, due primarily to its concern that a negative inference was not drawn from Defendant's failure to produce the DVD and that the MCOHR appeared to accept blindly Mr. Frasier's description. (ECF No. 23, Ex. E, at 1). In response to the remand order, Defendant promptly submitted the damaged DVD to the CRB for

review. (ECF No. 23, Ex. C). On December 17, 2007, the MCOHR investigator advised the CRB, by a written memorandum, that she had received the DVD from FedEx Office and attempted to view it, but was only able to watch "10 seconds" of nondescript footage. (ECF No. 24, Ex. E-8).

Throughout this litigation, Plaintiff has repeatedly alleged impropriety on the part of Defendant related to the surveillance video. His initial complaint included a freestanding claim alleging spoliation of video evidence. (ECF No. 2, at 16). After that claim was dismissed with prejudice, Plaintiff attempted to revive it in his proposed amended complaint, relabeling it as "Obstruction of Justice and Spoliation of Videotape Evidence." (ECF No. 35, Ex. 1, at 8). He requested that sanctions be imposed for spoliation of this evidence in his initial motion for summary judgment (ECF No. 23), which was denied as moot, and again in his motion to stay pending appeal (ECF No. 52), which sought judgment on the pleadings as a sanction. The court denied Plaintiff's motion for judgment on the pleadings, finding that such relief was "improper at this stage of the proceedings." (ECF No. 57, at 6).

Less than one week later, Plaintiff renewed his request for sanctions, arguing that Defendant's representatives made inconsistent statements regarding the video during the

administrative proceedings, which Plaintiff cited as evidence that Defendant intentionally damaged the DVD in order to prevent its content from coming to light in this litigation. (ECF No. 60). After restating the standard it set forth in the decision addressing Plaintiff's motion for judgment on the pleadings – *i.e.*, that the moving party must demonstrate that (1) the nonmoving party had an obligation to preserve the evidence, (2) the destruction or loss was accompanied by a culpable state of mind, and (3) the lost evidence was relevant – the court explained:

> While it is undoubtedly true that Defendant had an obligation to preserve the surveillance video footage, Plaintiff offers nothing, aside from conclusory allegations, suggesting that the DVD was damaged by Defendant with a "culpable state of mind." Indeed, Defendant has presented multiple declarations of its representatives unequivocally stating otherwise. Moreover, Plaintiff has failed to identify any change of circumstance occurring between the date the court issued its prior order, denying a virtually identical motion, and the date he filed the instant motion less than one week later. He appears simply to present the same substantive claim under a new label, requesting different sanctions. The court will not countenance such practices. Plaintiff's motion will be denied.

(ECF No. 69, at 10). Plaintiff now moves for reconsideration of that decision. (ECF No. 72).

Federal Rule of Civil Procedure 54(b) governs reconsideration of interlocutory orders that do not constitute

final judgments in a case. That rule provides that "any order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised at any time before the entry of judgment adjudicating all the claims." Fed.R.Civ.P. 54(b). Because the court's order denying Plaintiff's motion for sanctions did not adjudicate all of his claims, his motion for reconsideration falls under the scope of Rule 54(b). *See Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003).

In the Fourth Circuit, the precise standard governing a motion such as this one is somewhat unclear. *See Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1472 (4th Cir. 1991). For instance, the Rule 60(b) standard does not bind the court on a motion to reconsider an interlocutory order. *Id.* at 1470; *Am. Canoe Ass'n*, 326 F.3d at 514. Even so, courts sometimes use the Rule 60(b) factors – newly discovered evidence, excusable neglect, etc. – as "guideposts" in deciding when to reconsider an earlier decision. *Robinson v. Fountainhead Title Group Corp.*, 252 F.R.D. 275, 291 (D.Md. 2008). "Doctrines such as law of the case . . . have [also] evolved as a means of guiding [the court's] discretion." *Am. Canoe Ass'n*, 326 F.3d at 515.

Regardless of the standard applied, Plaintiff's motion for reconsideration cannot prevail. Plaintiff initially contends

that the underlying decision "has contradicted Fourth Circuit precedent," (ECF No. 72, at 1 (citing *Silvestri v. General Motors Corp.*, 271 F.3d 583 (4th Cir. 2001)), and then reasserts the same argument he presented in his prior motions – *i.e.*, "[t]he fact that this videotape evidence is relevant to this litigation justifies spoliation period" (*id.* at 2); "FedEx has made several inconsistent statements with respect to the videotapes which should constitute bad faith" (*id.* at 4). He does not specify the manner in which the court's prior decision conflicts with *Sylvestri*, however, nor does it appear to do so. Moreover, he has not presented any new evidence, identified any intervening change in the law, or shown clear error of law or manifest injustice warranting the extraordinary relief he seeks. Rather, he essentially asks the court to change its mind based on the same information he presented before. That is not a proper basis for a motion for reconsideration. *See Jarvis v. Enterprise Fleet Services and Leasing Co.*, Civ. No. DKC 07-3385, 2010 WL 1929845, at *2 (D.Md. May 11, 2010). Accordingly, this motion will be denied.

Plaintiff has additionally filed a motion to strike discovery requests as a result of spoliation of evidence, seeking an order that Defendant is "not entitled to any countervailing evidence which includes but [is] not limited to discovery . . . [a]s a result of spoliation of surveillance

tape(s)."  (ECF No. 80, at 4).  Also pending is another "motion for imposition of sanctions for spoliation of videotape evidence" in which Plaintiff appears to ask the court to enter default judgment in his favor because Defendant "refused to provide material and relevant evidence," *i.e.*, the surveillance video.  (ECF No. 97, at 8).  Both of these motions are substantively identical to Plaintiff's motion for reconsideration and prior filings on this subject, and will be denied for the same reasons.

## III. Defendant's Motion to Strike

Upon receiving Defendant's initial disclosures, Plaintiff filed a document entitled "Plaintiff's Response to Defendant Fed Ex Office & Print Services Regarding Damages and Refusal to Submit" in which he complains that Defendant erroneously stated in its disclosures that Plaintiff's claim for damages had been dismissed, and "did not disclose information or documents with respect to civil rights violations or complaint[s] they have received at the Bethesda, Maryland[,] facility, or other information required in initial disclosures concerning racial discrimination required by Rule [26(a)]."  (ECF No. 74, at 1). Plaintiff additionally asked the court to "clarify [its] order concerning damages in this action."  (*Id*. at 2).

Defendant has moved to strike this document, arguing that it fails to comply with Local Rules and/or prior orders in this

case. (ECF No. 77). Defendant purports to bring its motion pursuant to Local Rule 105, but that rule provides no basis for a motion to strike. In fact, the only potential basis for such a motion is Federal Rule of Civil Procedure 12(f), which provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The document filed by Plaintiff is not a "pleading." *See* Fed.R.Civ.P. 7(a) (listing documents that qualify as pleadings); *Manson v. Inge*, 13 F.2d 567, 568 (4th Cir. 1926) (defining pleadings as "allegations made by the parties to a civil or criminal case, for the purpose of definitely presenting the issue to be tried and determined between them"). Consequently, the court cannot strike the challenged document. *See Hrivnak v. NCO Portfolio Mgmt, Inc.*, 723 F.Supp.2d 1020, 1029 (N.D.Ohio 2010) ("While some courts have employed Fed.R.Civ.P. 12(f) to strike an affidavit or a brief, or portions thereof, there is no basis in the Federal Rules for doing so."); *see also MJ Harbor Hotel, LLC v. McCormick & Schmick Rest. Corp.*, 599 F.Supp.2d 612, 623 (D.Md. 2009); *Thomas v. Bet Sound-Stage Restaurant/BrettCo, Inc.*, 61 F.Supp.2d 448, 458 (D.Md. 1999). Accordingly, Defendant's motion to strike will be denied.

**IV. Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment**

Defendant contends that a live controversy is no longer presented in this case, rendering it moot, or that Plaintiff cannot demonstrate standing to seek the injunctive or declaratory remedies he seeks. Given the stage of the case, application of the summary judgment standard is appropriate.

**A. Standard of Review**

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986); *see also JKC Holding Co. LLC v. Washington Sports Ventures, Inc*., 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372 (2007); *Emmett*, 532 F.3d at 297. A party who bears the

burden of proof on a particular claim must factually support each element of his or her claim. *Celotex Corp.*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254; *Celotex Corp.*, 477 U.S. at 324. "A mere scintilla of proof, however, will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (citations omitted).

### B. Analysis

In the memorandum opinion addressing Plaintiff's motion for leave to amend his complaint, the court concluded that "Plaintiff's requests for monetary damages under § 1981 must fail." (ECF No. 44, at 7). Thus, the only remedies remaining in the amended complaint are declaratory and injunctive relief related to alleged violations of § 1981 and the state law

analog. Specifically, Plaintiff seeks a declaration "that the act(s) and practices of 'FedEx Office' as alleged in this complaint, violate 42 U.S.C. [§] 1981[.]" (ECF No. 35, Attach. 1, at 11). As injunctive relief, he seeks an order "enjoining and permanently restraining" future violations and requiring Defendant to take "affirmative steps . . . to remedy the effects of the illegal discriminatory conduct alleged in the complaint, and to prevent repeated occurrences in the future." (*Id*. at 11-12). At his deposition, he clarified that these steps include requiring Defendant to (1) terminate Mr. Sindelar's employment, (2) provide all employees with diversity training and a copy of the company's employee handbook, and (3) close the Bethesda FedEx pending proof of compliance with other requirements. (ECF No. 92, Attach. 4, Plaintiff Dep., at 144-45).

In its moving papers, Defendant argues that "Plaintiff's requested equitable relief is either moot, related only to allegations of wide-spread discrimination of which Plaintiff admits he has no evidence, or beyond the power of the [c]ourt" to grant. (ECF No. 92, Attach. 1, at 12). These arguments may be characterized, generally, as a challenge to Plaintiff's standing. Indeed, even if the issue was not raised by Defendant, the court has an independent obligation "to examine the standing of [a plaintiff] as a matter of the case-or-

controversy requirement" of Article III of the United States Constitution. *Juidice v. Vail*, 430 U.S. 327, 331 (1977).

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984). An essential component of the "case or controversy" requirement is that "a litigant have 'standing' to challenge the action sought to be adjudicated in the lawsuit." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To satisfy the requirement for constitutional standing, a plaintiff must demonstrate that:

> (1) [he] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

"The party invoking federal jurisdiction bears the burden of establishing these elements." *Stephens v. County of Albermarle, Va.*, 524 F.3d 485, 491 (4th Cir. 2008) (quoting *Lujan*, 504 U.S. at 561). A plaintiff may establish standing "in

the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* (quoting *Lujan*, 504 U.S. at 561). At the summary judgment stage, "the plaintiff bears the burden of proving the exist[ence] of standing by affidavit or other evidence." *Levinson-Roth v. Parries*, 872 F.Supp. 1439, 1445 (D.Md. 1995).

Here, the sole allegations of injury contained in Plaintiff's amended complaint relate to Mr. Sindelar's alleged conduct on June 16, 2006. As a result of that conduct, Plaintiff asserts, he has "suffered, continues to suffer, and in the future [will] suffer emotional distress, . . . [was] greatly humiliated[,] suffered . . . bodily distress, was greatly injured in his character and reputation, and generally suffered damages by reason of the foregoing." (ECF No. 35, Attach. 1, at 7). At his deposition, he explained,

> [t]here has [sic] been physical
> manifestations of high blood pressure, I've
> got back issues, had back issues but because
> of the stress of that causes more of that
> sort of situation to happen, insomnia from
> that. It causes headaches when you think of
> that. I've had bad experiences, bad dreams
> about that situation which I won't explain
> in detail. But that is all of the effects
> on that. . . . And the name FedEx it just
> always brings about a stressful reaction
> from me, just the FedEx name because of that
> issue.

(ECF No. 98, Attach. 1, Plaintiff Dep., at 14-15). He acknowledged, however, that he not seen a doctor related to these symptoms, and that he has no other documentation to support his claims with regard to physical manifestations of injury. (*Id.* at 15-16).

Assuming, *arguendo*, that Plaintiff has suffered an "injury in fact" that is fairly traceable to Mr. Sindelar's conduct on the evening in question, he has failed to establish that his injury is likely to be redressed by the declaratory or injunctive relief he seeks. Equitable relief, by its very nature, is incapable of redressing a wrong that has occurred strictly in the past. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998) (injunctive relief "cannot conceivably remedy any past wrong but is aimed at deterring [a party] from violating [the relevant law] in the future"); *Am. Postal Workers Union v. Frank*, 968 F.2d 1373, 1376 (1st Cir. 1992) ("a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past"). Plaintiff has presented nothing, aside from his own conclusory allegations, suggesting that racial discrimination has occurred at any FedEx facility on any other occasion, much less that Defendant maintains a discriminatory policy. As Plaintiff acknowledged at his deposition, his request for injunctive relief is based upon his belief that racial discrimination is

ongoing at the Bethesda FedEx. That belief, in turn, is based solely "upon on[e] incident that happened to [him] four years ago." (ECF No. 92, Attach. 4, at 113).[3]

In *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983), the Supreme Court explained that past exposure to harm does not confer standing upon a litigant to obtain equitable relief "[a]bsent a sufficient likelihood that he will again be wronged in a similar way." In that case, the plaintiff alleged that, upon stopping him for a traffic violation, police officers unconstitutionally applied a chokehold, rendering him unconscious and resulting in physical injury. He sued the City of Los Angeles and four officers and obtained a preliminary injunction barring use of the chokehold procedure except when death or serious bodily injury was threatened. The Supreme Court reversed, finding that the plaintiff "failed to demonstrate a case or controversy with the City that would

---

[3] In opposing a prior motion for summary judgment filed by Plaintiff, Defendant attached the declaration of Mr. Sindelar, in which the manager denied, *inter alia*, refusing to permit Plaintiff to enter the store, adding that "[i]n the more th[an] six years that I have been employed third shift at the Bethesda store, I have only denied access to one person – and he was being chased by the Montgomery County police at the time." (ECF No. 24, Attach. 4, at ¶ 6). At his deposition, Plaintiff "assum[ed]" this individual was African-American and repeatedly cited this admission as evidence that the alleged racial discrimination has occurred on multiple occasions. (ECF No. 92, Attach. 4, at 148). The record clearly does not support this claim.

justify the equitable relief sought." *Lyons*, 461 U.S. at 105.
His standing to seek such relief, the Court held, depended upon
whether he was "realistically threatened by a repetition of his
experience of October 1976." *Id.* at 109. "In other words,
because Lyons could not show that an injunction barring future
use of the chokehold would provide relief to him, personally, he
had no standing to seek that remedy." *Am. Postal Workers Union*,
968 F.2d at 1376.[4]

Similarly, Plaintiff cannot show how the equitable relief
he seeks would redress the injury he allegedly suffered. He
acknowledged at his deposition that he has only been to the
Bethesda FedEx on one occasion and that he is unlikely to return
in the future. (*Id.* at 14, 144). Thus, there is virtually no
likelihood that Plaintiff, himself, will experience the alleged
discrimination again. *See Lujan*, 504 U.S. at 564 (even "'some
day' intentions [to return] – without any description of
concrete plans, or indeed even any specification of *when* the
some day will be – do not support a finding of the 'actual or
imminent' injury that our cases require"); *Proctor v. Prince
George's Hosp. Center*, 32 F.Supp.2d 830, 833 (D.Md. 1998)

---

[4] Although *Lyons*, and cases cited therein, considered
injunctive relief exclusively, "the same principles apply with
respect to declaratory judgments, which are authorized only
'[i]n a case of actual controversy.'" *Am. Postal Workers*, 968
F.2d at 1377 n. 4 (citing 28 U.S.C. § 2201; *Golden v. Zwickler*,
394 U.S. 103, 108 (1969)); *see also Levinson-Roth*, 872 F.Supp.
at 1446.

(dismissing for lack of standing where "[t]he present record neither reflects any on-going discrimination against Plaintiff, nor suggests that he is likely to return to [Defendant hospital] in the near future"). Although he claims that he has patronized another FedEx Office location more frequently (ECF No. 98, Attach. 1, at 5), he presents no evidence suggesting that the conduct about which he complains is threatened at this or any other location. Indeed, the specific relief he seeks, as clarified by his deposition testimony, relates largely to the Bethesda FedEx.

Injury occurring exclusively in the past, such as that alleged here, is typically redressed by an award of monetary damages. *See Lyons*, 461 U.S. at 105. Such an award is unavailable in this case, however, and the court declines to exercise its discretion to permit further amendment at this late stage of the litigation.[5] As to his claim for equitable relief,

---

[5] The only remaining evidence in support of Plaintiff's version of events in this case is his own deposition testimony. Throughout this litigation, Plaintiff has relied on Mr. Zeas as a corroborating witness. Mr. Zeas' deposition testimony, however, did not fully support Plaintiff's claims, and Plaintiff now asks that his colleague's deposition be "stricken[] from the record," citing, *inter alia*, that Mr. Zeas acknowledged that "his deposition was false[,] inaccurate and fraudulent"; that he "has been unstable over the last 2-4 years and went to the deposition seeking a job by his own admission"; and that he "was flirtatious with the FedEx attorney who[] happened to be . . . 'an attractive female' [that] he was trying to impress." (ECF No. 98, at 20).

Plaintiff's standing depends on whether, in the future, he is likely to be refused service at any FedEx Office location based on his race. He has not come close to establishing that such future injury is threatened. Accordingly, Defendant's motion will be granted.[6]

## V. Defendant's Motions to Seal

Pursuant to the parties' agreed protective order in this case (ECF No. 83, Ex. 1), Defendant has filed motions to seal an exhibit attached to its motion to dismiss or for summary judgment (ECF No. 95) and an exhibit attached to Plaintiff's cross-motion for summary judgment (ECF No. 101). Plaintiff has not opposed these motions.

A motion to seal must comply with Local Rule 105.11, which provides:

> Any motion seeking the sealing of pleadings, motions, exhibits or other papers to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protections. The Court will not rule upon the motion until at least 14 days after it is entered on the public docket to permit the filing of objections by interested parties. Materials that are the subject of the motion shall remain temporarily sealed pending a ruling by the Court. If the motion is denied, the party

---

[6] Because the court finds that Plaintiff lacks standing, his cross-motion for summary judgment and motion for sanctions will be denied as moot. (ECF Nos. 96, 98).

> making the filing will be given an
> opportunity to withdraw the materials.

There is a well-established common law right to inspect and copy judicial records and documents. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). If competing interests outweigh the public's right of access, however, the court may, in its discretion, seal those documents from the public's view. *See In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984).

Prior to sealing any documents, the court must provide the non-moving party with notice of the request to seal and an opportunity to object. *Id*. This notice requirement may be satisfied by either notifying the persons present in the courtroom or by docketing the motion "reasonably in advance of deciding the issue." *Id*. at 234. Finally, the court should consider less drastic alternatives to sealing, such as filing redacted versions of the documents. If the court decides that sealing is appropriate, it should also provide reasons, supported by specific factual findings, for its decision to seal and for rejecting alternatives. *Id*. at 235.

In support of the motion to seal the exhibit attached to its motion for summary judgment, Defendant asserts that the "document contains confidential and proprietary information that is classified for discovery purposes as Confidential Information," citing the parties' agreed protective order. (ECF

No. 95, Attach. 1).  The exhibit is a portion of an employee handbook.  Defendant's motion to seal an exhibit attached to Plaintiff's cross-motion for summary judgment indicates that the exhibit in question contains personal identifier information. (ECF No. 101).  While Defendant has not explicitly discussed any possible alternatives to sealing, these motions will be granted for privacy and security purposes and to protect confidential employee documents.

## VI.  Conclusion

For the foregoing reasons, Defendant's motion for summary judgment and its motions to seal will be granted, and the remaining motions will be denied.  A separate order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge